## MURPHY v. CITY OF YONKERS.

(Supreme Court, Appellate Division, Second Department.   November 21, 1899.)

1. MUNICIPAL CORPORATIONS—CONTRACT FOR BUILDING SEWER.

Where a contract with a city for the construction of a sewer provides that the work is to be done according to certain plans and specifications, which form part of the contract, and no reference is made to the proposal and acceptance annexed to the contract, the specifications govern, when a difference arises between them and the proposal.

2. SAME—EXTRA WORK BY CONTRACTOR — CONSTRUCTION OF CONTRACT—DECISION OF CITY ENGINEER THEREON.

Where a contractor, in strict conformity with the language of the specifications, which formed a part of the contract for the construction of a sewer, had commenced the construction of a drop well on the east side of the sewer, when he was directed by the city engineer to suspend his work and build it on the west side, which he did, with the understanding that the question whether the additional expense was or was not for extra work was to be decided afterwards, a provision in the contract confiding to the engineer the final decision of any question relating to the construction and meaning of the specifications does not apply, and hence a decision of the engineer that such work was not extra work is not binding.

3. APPEAL—FINDINGS OF FACT.

A finding by the jury that certain work done by a contractor was extra work is conclusive on appeal.

Appeal from trial term, Westchester county.

Action by Mary A. Murphy against the city of Yonkers.  From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals.  Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James M. Hunt, for appellant.
John F. Brennan, for respondent.

GOODRICH, P. J.  The action is brought to recover a balance alleged to have been due from the defendant to one Dennis Murphy on a contract, and for extra work.  The plaintiff is the assignee of the contract, and recovered judgment on a verdict for $5,000.  From such judgment, and an order denying a motion for a new trial, the defendant appeals.

The contract, dated November 19, 1888, provided for the building of a sewer east through Garden street into Nepperhan avenue, and north through that avenue to its intersection with Ashburton avenue.  The price was to be $23,750, 10 per cent. of which was to be retained by the city until six months after the completion of the contract, and the acceptance of the work by the city, up to which time the contractor was to "keep the whole work executed by him in perfect order and repair."  The work was to be completed within 95 days from its commencement, excluding Sundays and holidays and the time during which work should be suspended in winter; and the contractor was to pay $7 per day as liquidated damages for each day in excess of that time.  Specifications and plans in accordance with which the work was to be done were made part of the contract.  The plaintiff alleged completion of the contract on March 20, 1890, and sued to re-

cover the 10 per cent., and certain claims for extra work not included in the contract, only three of which were submitted to the jury. They are: (1) extra work in shoring up and supporting the arch of the Croton Aqueduct where it crossed the line of the sewer, $250; (2) extra work in repairing a completed portion of the sewer at Ashburton avenue, where it had been injured by the negligent acts of the city in causing an overflow of water from its hydrants, $296; (3) extra work at the junction and drop well of Ashburton and Nepperhan avenues, $580. The defendant claims that these items, with interest to the date of the verdict, would amount as follows:

| | | |
|---|---:|---:|
| First item...................................... | $ 250 | |
| Interest ...................................... | 130 | |
| | | $ 380 |
| Second item.................................. | $ 296 | |
| Interest ...................................... | 153 | |
| | | 449 |
| Third item.................................... | $ 580 | |
| Interest ...................................... | 301 | |
| | | 881 |
| Fourth item, 10 per cent...................... | $2,375 | |
| Interest ...................................... | 1,235 | |
| | | 3,610 |
| Total ...................................... | | $5,320 |

—And that, as the verdict was for $5,000, some parts of each of the four items must have been deducted by the jury; and, in general, that the plaintiff was not entitled to a recovery, because the contractor never completed his contract. These several items will be considered in their order. There was a sharp conflict of testimony on each of these questions, and it becomes necessary to refer to the evidence and the charge of the court upon each item.

As to the first, of $250, it appeared in evidence that at the point where the Croton Aqueduct crossed the line of the sewer there was a water main of the city of Yonkers in the center of the street; that the water board, under whose supervision the sewer was built, desired to have this main removed to the side of the street, near the Croton Aqueduct arch; and that the contractor claimed that such work was not within the terms of his contract, but that the city concluded that the work ought to be done, leaving open the question whether or not the work which the removal rendered necessary was outside of the contract. We think the work did not fall within the specifications, but was extra work, and was necessitated by the order to change the location of the water pipe. There was some conflict of evidence on the subject, and as to amount, but the court fairly submitted the matter to the jury.

The second item relates to work which, the plaintiff gave evidence to show, resulted from the letting loose of a large and unusual body of water from one of the city's hydrants, by employés of the city, at a place where sufficient precautions had been taken by the contractor against injury to the newly-built sewer from the ordinary flow of water. The plaintiff also gave evidence to show that, by reason of the bad condition in which the gutters were maintained by the city, the water was carried upon the sewer construction, and dam-

aged it, and that the extra work occasioned by repairs amounted to the sum of $296. The city claimed that the overflow was an ordinary one, and hence arose another question of fact, which was properly submitted to the jury. It may also be observed that the clause in the contract which required the contractor to keep the work executed by him in repair for six months after the completion did not relate to injuries caused by such acts or omissions on the part of the city.

The third item is somewhat more complicated. It relates to a junction and drop well at the intersection of Ashburton and Nepper- han avenues, where another line of sewer, running through Ashburton avenue, crossed the new sewer.. The plan in evidence, and referred to in the contract, shows no such construction in detail, but the specifications embodied in the contract provided as follows:

"There shall be a junction at Ashburton avenue with 48-inch branch towards the east, to be closed with a bulkhead of brickwork, not less than 12 inches. This junction shall also be provided with a manhole and drop well to receive the discharge from the Ashburton avenue sewer that may hereafter be built on the east side."

The counsel for the city contended that the word "east," last used, was a clerical error for "west," and cited a clause in the proposals for bids annexed to the contract, and containing these words:

"1 junction at Ashburton avenue, with 48-inch connection towards the east, and with drop well and 36-inch connection towards the west."

The city contends that the contractor necessarily must have understood that "the only purpose of a drop well in a main line of sewer is to receive the flow from a sewer of higher elevation than the main line of the sewer," and consequently must have known that the word "east" was a clerical error for "west." In other words, the contention is that this fact is of common knowledge. At least one of the members of this court (the writer) has no such knowledge, however common it may be, and personally considers the contention of common knowledge to be unsound. Indeed, it may be that a drop well would be of more or less service on either the upper or lower side of the main sewer,—on the upper side, to prevent a forcible inflow of water to the main sewer; and on the lower side, to prevent a forcible outflow from such sewer, if it became overloaded with the discharge from the crossing sewer, or as a result of its own accretions. Within common knowledge, one purpose might be as useful as the other. Be that as it may, the contract is plain, and the contractor had a right, if he acted in good faith, to rely upon the exact words of the contract. While the proposal and acceptance are annexed to the contract, they were but initial steps to the contract itself. Non constat but changes might have been made between the time of the proposals and acceptance by the contractor and the time of the execution of the formal contract. The contractor agreed to do the work "according to the several plans or drawings and specifications, * * * which said plans and specifications form, and are to be considered as, part of this contract." No reference is made in the contract to the proposals and acceptance. Wherever the specifications named in the contract differ from the proposal, the specifications must govern. In strict conformity with the language of

the specifications, the contractor had commenced the construction of the drop well on the east side of the sewer, when he was directed by the city engineer to suspend his work and build the drop well on the west side, which he subsequently did, at an additional expense, and claimed the expense of the work on the east side as for extra work. This work on the west side was done by direction of the city's officers, with the understanding that the question whether the additional expense was or was not for extra work was to be decided afterwards. The court submitted the subject to the jury, and their finding is conclusive.

The counsel for the city also contends that the contract confides to the engineer the final decision of any questions relating to the construction and meaning of the plans and specifications, and that he decided all these questions against the contractor. We do not think, however, that this provision of the contract applies to a question of the character stated. The three cases cited by the appellant's counsel, and in which there was a similar provision, may be readily distinguished. In Dwyer v. Board, 27 App. Div. 87, 50 N. Y. Supp. 123, the court held that the action could not be maintained, as the plaintiff had, by release and stipulation, precluded his recovery. Lawrence v. Mayor, etc., 29 App. Div. 298, 51 N. Y. Supp. 416, related simply to the amount due under the plaintiff's contract, which contemplated the use of second-hand stone of an existing arch. As this was ascertained to be unfit for use, new stone was furnished by the city as a substitute; and the court held that the contractor, who was to be paid a certain price per cubic yard for cut-stone masonry, was concluded by the decision of the engineer as to the number of cubic yards of such masonry for which he was to receive payment. The court said (page 300, 29 App. Div., and page 417, 51 N. Y. Supp.):

"If they had declined to use the stone, a different question would be presented, but they accepted that which the city supplied, without objection; and there is no legal reason, and certainly no equitable one, why they should recover against the city the large sum they demand on account of the substitution of the one stone for the other, accepted by them and used by them in the work, apparently, without protest."

Slattery v. Mayor, etc., 31 App. Div. 127, 52 N. Y. Supp. 546, did not turn upon the clause in question, and the opinion makes no reference thereto. It was decided upon an entirely different question.

The fourth item, relating to the 10 per cent. balance of the contract, involved the question whether the contractor had completed his contract within the specified time. The only uncompleted part which the verdict leaves open to question is the work at a point 85 feet south of Ashburton avenue, where the city claimed that about 14 feet of the arch of the sewer had partially failed. so that it was in an unsafe condition. There was evidence that the contractor was notified of this condition, and refused to reconstruct the sewer at that point, on the ground that the city, and not he, was responsible for the failure, whereupon the city relet that portion of the work to another contractor, who did the work for the sum of $14. While this item might possibly have been found by the jury to be the result of a tech-

nical failure on the part of the contractor to complete his work, we cannot say that the jury came to such a conclusion, or did not, in their reduction of the amount claimed by the plaintiff, make due allowance for the amount expended by the city. At any rate, it would seem inequitable to set aside a verdict for such a trifling error, if it be an error. The court submitted to the jury the questions involved in the fourth item, and we cannot interfere with their verdict.

On the whole record, we think the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.